NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

|  |  |  |
|---|---|---|
| LEONARDO ALEGRE, | : | **Civil Action No. 15-2342 (SRC)** |
|  | : |  |
| Plaintiff, | : | **OPINION** |
|  | : |  |
| v. | : |  |
|  | : |  |
| ATLANTIC CENTRAL LOGISTICS, et al. | : |  |
|  | : |  |
| Defendants. | : |  |
|  | : |  |

---

**CHESLER**, District Judge

This matter comes before the Court on the motion by Plaintiff Leonardo Alegre ("Plaintiff") to remand this action to the Superior Court of New Jersey, Middlesex County. Defendant XPO Last Mile, Inc. ("Defendant") opposes the motion. The Court has considered the parties' submissions. For the reasons that follow, the Court will deny the motion to remand.

I.     BACKGROUND

This putative class action involves a compensation claim for overtime hours. Defendant XPO is an international logistics company that arranges furniture deliveries. XPO conducts "last-mile deliveries," which consists of moving goods from transportation hubs to their final destinations. Defendant Simply Logistics, Inc. ("Simply Logistics") is a subsidiary of XPO that operates in New Jersey.

From about January of 2013 to the present, Plaintiff and other putative class members drove trucks for Defendants' operation. Plaintiff alleges that he and others delivered goods from

1

Elizabeth, New Jersey, to customers in New Jersey and New York.  Plaintiff further asserts that the class members worked for well over 40 hours per week, entitling them to overtime pay that they have not received.  Defendants contend that Plaintiff and his company, Atlas Freight Services, LLC, worked as independent contractors, rather than employees, and that they are accordingly not entitled to overtime pay.

On January 8, 2015, Plaintiff filed a First Amended Class Action Complaint ("the Complaint") in New Jersey Superior Court, Middlesex County, against Defendants.  The sole count in the complaint alleges a violation of New Jersey's Wage and Hour Law.

Defendant XPO removed the case to Federal District Court on April 2, 2015.  In its notice of removal, Defendant asserted that this Court has jurisdiction pursuant to the Class Action Fairness Act ("CAFA") because the action has a proposed class of over 100 members, the amount in controversy is over $5,000,000, and minimal diversity exists.

On May 4, 2015, Plaintiff moved to remand this matter back to New Jersey Superior Court.  In support of his motion, Plaintiff argues that Defendants cannot establish jurisdiction to a "legal certainty," particularly because Plaintiff specifically stated in the Complaint that the amount in controversy is not over $5,000,000.  Plaintiff further asserts that even if Defendants could meet their burden, the Court should nevertheless remand the matter because the proposed class meets the "local controversy exception" and satisfies the standard for permissive remand.

Defendant XPO opposes Plaintiff's motion.  Defendant urges that it need not prove jurisdiction to a legal certainty, but instead only by a preponderance of the evidence.  Defendant further argues that it has satisfied the jurisdictional prerequisites irrespective of which standard the Court applies.  Finally, Defendant counters Plaintiff's proposed exceptions to jurisdiction by arguing that neither the local controversy doctrine nor permissive remand apply.

2

## II.   DISCUSSION

Pursuant to 28 U.S.C. § 1447(c), remand to state court is required where "it appears that the district court lacks subject matter jurisdiction."  Here, Defendant removed the case on the grounds that this Court has jurisdiction pursuant to CAFA, which vests original jurisdiction in the federal district courts to hear "class action" lawsuits in which the proposed class has at least 100 members, "the parties are minimally diverse," and "the matter in controversy exceeds the sum or value of $5,000,000." Standard Fire Ins. Co. v. Knowles, 133 S.Ct. 1345, 1348 (2013) (quoting 28 U.S.C. § 1332(d)(2), (d)(5)(B)).  Plaintiff contends that CAFA's jurisdictional prerequisites are not met, but if they are, that this Court should nevertheless remand.  The Court is not persuaded by these arguments, and will address both contentions in turn.

### A.  CAFA's Jurisdictional Prerequisites

#### 1.  Amount in Controversy

The parties' central dispute is over whether the amount in controversy exceeds $5,000,000, as is required.  Plaintiff emphasizes that in paragraph 28 of the Complaint, he specifically alleges that the amount in controversy falls below that amount.  When ascertaining the amount in controversy, however, a plaintiff's stipulation does not make "a critical difference." Standard Fire, supra, 133 S. Ct. at 1348.  That is because, in part, a plaintiff who files a proposed class action "cannot legally bind members of the proposed class before the class is certified."  Id. at 1349.  Plaintiff lacks "the authority to concede the amount-in-controversy issue for the absent class members."  Id.  Accordingly, this Court is under an obligation to disregard Plaintiff's assertion.  Id. at 1350 (asserting that district court "should have ignored [the plaintiff's] stipulation" as to the amount in controversy).

Putting Plaintiff's assertion to the side, the Court must decide what standard to apply when assessing the amount in controversy.  Plaintiff cites to Morgan v. Gay, 471 F.3d 469 (3d Cir. 2006) and Frederico v. Home Depot, 507 F.3d 188 (3d Cir. 2007) for the proposition that because Plaintiff pleaded that the amount in controversy fell below the jurisdictional minimum, Defendant must now prove "to a legal certainty" that Plaintiff can recover over $5,000,000. Defendant counters that the Supreme Court has more recently held that courts are to decide "by a preponderance of the evidence [standard], whether the amount-in-controversy requirement has been satisfied."  Dart Cherokee Basin Operating Co. v. Owens, 135 S. Ct. 547, 554 (2014).

The Court finds Defendant's arguments to be more closely aligned with the Supreme Court's decision in Dart Cherokee, which appears to dispose of Plaintiff's request for a legal certainty test.  In that case, the Supreme Court held that in putative class actions, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."  Id.  If a plaintiff challenges the defendant's amount-in-controversy allegations, a court will weigh the parties' proofs by a preponderance of the evidence.  Id. at 553-54.  This Court will therefore assess, by a preponderance of the evidence, whether the amount in controversy exceeds $5,000,000, in the aggregate of all class members' claims.  See Standard Fire, 133 S. Ct. at 1348 (quoting § 1332(d)(6)).

For reasons explained in this section, the Court finds that Defendant has demonstrated by a preponderance of evidence that the amount in controversy exceeds $5,000,000.  The amount in controversy turns on the following five variables:  (i) the amount of overtime hours allegedly worked by the purported class members; (ii) the liability period; (iii) the applicable pay rate; (iv) the size of the class; and (v) attorneys' fees.  Although the parties dispute nearly every variable,

the liability period is the dispositive factor here.  Applying a four-year liability period, the jurisdictional amount is satisfied even if the Court accepts all of Plaintiff's proposed variables.

### i.   Number of overtime hours

Plaintiff alleges in the Complaint that he and the other class members worked more than forty hours per week but were not paid time-and-a-half for overtime hours.  Defendant has submitted transcripts from a workers' compensation action that Plaintiff filed against Atlantic Central Logistics before the New Jersey Department of Labor, in which Plaintiff testified that he worked approximately fifteen hours per day for five days per week [Docket Entry 1, Document 9] ("I have to be there between six o'clock and 6:30 every morning . . . . five days a week . . . . I was getting home at 10 o'clock at night every night.").  Plaintiff criticizes Defendant's use of Plaintiff's testimony because Defendant was not a party to that litigation.  Notably, however, Plaintiff does not contend that his outside testimony was inaccurate, nor does he provide any authority to suggest that the use of that testimony is not permitted.  The Court views this outside testimony as a party admission by Plaintiff, and it may fairly be considered.  See Fed. R. Evid. 801(d)(2).  Plaintiff now submits a declaration in which he estimates that he worked only about 30 hours of overtime per week.  The overtime hours that must be considered therefore range from 30-35.  For reasons demonstrated below, this disparity is inconsequential in the calculation and the Court therefore need not resolve this particular dispute.

### ii.  Liability Period

In support of the remand motion, Plaintiff asserts that the amount in controversy should be calculated based on a two-year period.  Yet in Plaintiff's Complaint, he asserts that the class seeks to recover from "January 2013 to the present," [FAC ¶ 2], which already amounts to two and a half years, and which will continue in duration until judgment.  Defendants contend that an

additional two-years should be added onto the liability period, for a total period of approximately four years.  The Court agrees.

The amount in controversy is normally determined with respect to when the complaint was filed.  See State Farm Mut. Auto. Ins. v. Powell, 87 F.3d 93, 97 (3d Cir. 1996).  Yet in suits to recover overtime hours inclusive of "future payments" earned after the filing of the complaint, the amount in controversy should account for those additional damages.  See Faltaous v. Johnson & Johnson, No. 07-1572 (JLL), 2007 WL 3256833, at *9 (D.N.J. Nov. 5, 2007) ("[D]amages accruing in the future are properly counted against the jurisdictional amount if the right to future payments . . . will be adjudged in the present suit.") (quoting Broglie v. MacKay–Smith, 541 F.2d 453, 455 (4th Cir. 1976)).  The Third Circuit has explained as follows in another context:

> Ordinarily, the amount in controversy is to be determined as of the time of the institution of the action . . . . However, in a back pay case in which a continuing right to employment is claimed, the amount in controversy cannot be considered only the amount of back pay accrued at the time of filing. If it were so treated, it would produce the anomalous result that a plaintiff could obtain district court jurisdiction by filing before the back pay due reached [the jurisdictional minimum], although recovery would exceed that amount through continuing accrual of back pay during the course of the action. This result has been explicitly rejected by those circuits faced with it.

> [Chabal v. Reagan, 822 F.2d 349, 356 (3d Cir. 1987)].

Put differently, "where the right to future payments will be judged in the present suit or where the right to back pay accruing after the filing of the complaint are recoverable, they should be considered during the Court's jurisdictional analysis."  Mazzucco v. Kraft Foods Global, Inc., No. 11-2430 (CLW), 2011 WL 6935320, at *3 (D.N.J. Nov. 23, 2011), report and recommendation adopted in full, No. 11-2430 (ES), 2011 WL 6936353 (D.N.J. Dec. 30, 2011).

To account for this principle in the context of the New Jersey Wage and Hour Law, "[c]ourts in this District have held . . . that an additional two year period is appropriate." Id. at *8.  In Faltaous, supra, Judge Linares added two years to the jurisdictional recovery period:

> [D]efendant utilizes a liability period of four years, which includes two years prior to suit measured by the statute of limitations and two years from the date of the filing of the complaint. The use of a four year liability period is appropriate. In the District of New Jersey the median time from filing to trial for a civil case was thirty-three (33) months in 2006. The complaint was filed on February 23, 2007. Using the two year statute of limitations before that date and adding thirty-three (33) months after that date is more than four years. Conservatively, plaintiff is seeking damages for two years prior to the complaint and the time from the filing date to trial—hence the four years.

> [2007 WL 3256833, at *10 (D.N.J. Nov. 5, 2007)].

Plaintiff does not counter Defendant's citations to these cases, nor the logic employed therein.  The Court will apply a four-year liability period, which nearly guarantees that the jurisdictional minimum is satisfied.

### iii.  Pay Rate

The Court must determine what rate to apply to the overtime hours allegedly worked by the putative class members.  Defendant calculates the pay rate by relying on Plaintiff's testimony in the Department of Labor litigation, as well as on estimates made by XPO's Director of Cartage, Brian Ruane.  Based on Plaintiff's testimony about how much revenue his company generated per week, as well as an estimate about the company's business costs, Defendant puts Plaintiff's individual net income at around $1,000 per week or $52,000 per year.  Defendant also provides roughly consistent data from the Bureau of Labor Statistics, which states that the annual mean wage for truck drivers in the New York-New Jersey metropolitan area is around $37,890.  Applying the "standard workweek method" to these figures (i.e., dividing this estimated salary

by a forty-hour workweek), Defendant calculates Plaintiff's standard hourly rate to be $25 ($1,000 per week divided by 40 hours). That would yield an overtime (1.5X) rate of $37.50.

Plaintiff challenges these methods, arguing that Defendant's subtraction for business costs is entirely speculative, and that using the standard workweek method does not make sense here because Plaintiff was not a salaried employee. Plaintiff instead uses the New Jersey State minimum wage of $8.25; Plaintiff persuasively cites to state legislation requiring that truck drivers be paid no less than one-and one-half of the State minimum wage for overtime. Plaintiff thus asserts that the class members are entitled to $12.37 for each overtime hour (8.25 times 1.5). The Court will accept Plaintiff's arguments with respect to this variable, and will conservatively use $12.37 as the overtime rate.

### iv. Class Size

The issue of the class size is ardently disputed, and although it is one of the amount-in-controversy variables, it is also a standalone prerequisite to jurisdiction. See 28 U.S.C. § 1332(d)(5)(B). Class members "include persons (named or unnamed) who fall within the definition of the proposed or certified class." Standard Fire, supra, 133 S. Ct. at 1348. Plaintiff's Complaint defines the proposed class as "[a]ll individuals that were based out of Atlantic Central Logistics/Simply Logistics/XPO facility in Elizabeth, New Jersey that performed truck driving and/or helper functions from January 2013 to the present." [FAC ¶ 2].

In its removal notice, Defendant initially asserted that it "reviewed its freight shipment records and determined that the number of individuals potentially within the [] proposed class exceeds 100 members." [Docket Entry 1, Page 3, Par. 10]. It submits the Declaration of Brian Ruane, XPO's Director of Cartage, who states, "According to XPO's freight shipment records, between January 1, 2013 and December 31, 2014, the aggregate number of people who

performed truck driver functions on behalf of contract carriers [] out of the Facility exceeded 100." [Docket Entry 1, Doc. 7, Par. 4]. He explains that about 60-65 trucks were tendered loads at the facility each day in 2013; in 2014, that number was 50-55; and the anticipated figure for 2015 is 50. In response to the remand motion, Defendant submits another sworn declaration from Ruane, who asserts based on "further review of XPO's freight shipment records, [that] the aggregate number of people who performed truck driver functions on behalf of contract carriers [] during the proposed class period is approximately 215." [Docket Entry 14, Doc. 2, Par. 4].

For his part, Plaintiff "estimates that . . . the approximate number of class members is approximately 75 drivers and helpers." [Docket Entry 11, Doc. 1, Page 7]. In Plaintiff's declaration, he asserts that it is his "understanding and belief" that the class size is 75 people. Plaintiff challenges Defendant's assessment, asserting that it fails to consider that most drivers stay the same each year, as the turnover rate is only 15%. Plaintiff also attacks Defendant's reliance on declarations rather than business records. Defendant responds that it has submitted three forms of evidence to support its estimations: (1) sworn testimony by XPO's Director of Cartage, which stems from personal knowledge, decades of industry experience, and his review of XPO's shipment records; (2) Plaintiff's sworn testimony in the workers' compensation hearing; and (3) data compiled by the Bureau of Labor Statistics.

Courts are permitted to accept a corporate official's declaration as evidence of the amount in controversy, see Hoffman v. DSE Healthcare Solutions, No. 13-cv-7582 (JLL), 2014 WL 1155472, at *3 (D.N.J. Mar. 21, 2014), and here, Defendant's submissions meet its burden. Plaintiff has submitted no evidence to counter Defendant's sworn affirmations, which are based on a review of shipment records. Moreover, as Defendant notes, Plaintiff's "understanding and belief" that the class size is 75 is necessarily limited, as "[Plaintiff] was not physically present at

the facility during the majority of the putative class period to learn any facts to support these statements" and "[Plaintiff's] company was tendered its first load several months after the start of the putative class period and tendered its last load more than 14 months ago." [Docket Entry 24, pg. 4]. Plaintiff's unsupported estimate is somewhat further undermined by the fact that Plaintiff appears intent on avoiding federal jurisdiction, as evinced by the Complaint's attempt to limit the recovery amount. Finally, Defendant highlights that it is not in a position to possess documents that would concretely establish the various figures at issue, as the purported class members were allegedly not on Defendants' payrolls, and as it is Plaintiff who could likely ascertain such documentation. All told, for these reasons, the Court finds that Defendant has demonstrated by a preponderance of the evidence that the class consists of at least 100 members.

As stated, in addition to constituting a jurisdictional prerequisite, the class size also impacts the amount in controversy. Plaintiff alleges in the Complaint that his claims are typical of the class, and accordingly, the Court must multiply the monetary value of Plaintiff's claim by an approximation of the class size. See generally Judon v. Travelers Prop. Cas. Co., 773 F.3d 495, 507 (3d Cir. 2014) ("In a class action, the class representative's claim(s) must be typical of the claims of the class . . . It is, therefore, not unreasonable to assume that . . . the proposed class representative[] has damages that are typical of the class."); see also Napoli v. HSBC Mortgage Servs. Inc., No. 12-cv-222 (RMB), 2012 WL 3715936, at *2 (D.N.J. Aug. 27, 2012) ("Because Plaintiffs' claims are alleged to be typical of the class, it is reasonable for this Court to simply multiply their purported damages amount by the number of foreclosures alleged in the Complaint.") (citing Frederico v. Home Depot, 507 F.3d 188, 199 (3d Cir. 2007)). Although the Court concludes that Defendant has demonstrated the class size to exceed 100 for purposes of the

standalone jurisdictional requirement, with respect to the amount in controversy, even accepting Plaintiff's estimate of 75 members yields an amount that satisfies the jurisdictional minimum.

### v. Attorneys' Fees

Plaintiff seeks reasonable attorneys' fees as part of the class recovery, and the assessment of the amount in controversy must account for that relief.  See generally Suber v. Chrysler Corp., 104 F.3d 578, 585 (3d Cir. 1997), as amended (Feb. 18, 1997) ("[I]n calculating the amount in controversy, we must consider potential attorney's fees.").  In the context of a claim asserted under the New Jersey Wage and Hour Law, courts may include a thirty percent attorneys' fee award.  See Mazzucco, supra, No. 11-cv-2430 at *10 (D.N.J. Nov. 23, 2011) ("N.J.S.A. 34:11–56a allows for the recovery of reasonable attorney's fees . . . . The median in the Third Circuit is roughly thirty percent (30%) of a common fund . . . . For the purpose of the amount in controversy analysis, this Court will apply a thirty percent (30%) rate.").  As explained in Faltaous, supra, No. 07-cv-1572 at *10,

> Attorney's fees are appropriately counted toward the amount in controversy if they are available to a successful plaintiff pursuant to the underlying statute. This applies to cases removed under CAFA. In this case, the underlying statute allows for the recovery of "costs and ... reasonable attorney's fees." It is not possible to determine with precision the amount of attorneys' fees plaintiff may recover. A reasonable approach, proposed by defendant, is to look to cases from this district arising under similar facts. This reveals that the median in the Third Circuit for attorneys' fee awards is approximately thirty percent (30%) of a common fund . . . . [A]ttorneys' fees of approximately 30 percent of the common fund are also regularly awarded in labor and employment law class actions . . . . [The Court will] multiply whatever is determined to be a fair estimation of the total amount of unpaid overtime by thirty percent (30%)."
>
> [Id. (internal citations and quotation marks omitted)].

Defendant asserts that even under a conservative application that uses the state minimum wage as the applicable rate, the attorneys' fee would exceed one million dollars, pushing the amount in controversy further beyond the jurisdictional minimum.  Plaintiff does not provide a proposed calculation of attorneys' fees; Plaintiff simply asserts that even if attorneys' fees are awarded, the amount in controversy falls below $3 million.

The Court holds that an application of a 30% fee is an appropriate estimate for the amount in controversy calculation; it appears, however, that the jurisdictional amount is satisfied before any fees are included.

### vi.  Assessment

Applying a four-year liability period, which the Court finds appropriate, the amount in controversy exceeds $5M even if the Court adopts all of Plaintiff's variables:

    30 (Plaintiff's declaration of overtime hours worked weekly) X
    12.37 (one-and-one-half times the NJ minimum wage) X
    52 (weeks per year) X
    75 (Plaintiff's estimation of the class-size)
    ---
    = $1,447,290 per year.

This is, thus far, consistent with Plaintiff's own calculations.  Multiplying this figure by a four-year liability period, however, yields $5,789,160, which exceeds the jurisdictional minimum even before adding fees.  A thirty-percent attorneys' fee would add an additional $1,736,748, for a total of $7,525,908.  If the Court applies Defendant's estimates regarding the number of overtime hours and class-size, the jurisdictional hurdle is farther cleared.  The Court thus finds by a preponderance of the evidence that the amount in controversy exceeds $5,000,000.

### 2.  CAFA's Other Requirements

In addition to requiring a certain amount in controversy, CAFA mandates that the proposed class have at least 100 members and that the parties be minimally diverse.  <u>See</u>

<u>Standard Fire</u>, 133 S.Ct. at 1348 (2013) (quoting 28 U.S.C. § 1332(d)(2), (d)(5)(B)).  For reasons discussed extensively above, the Court finds by a preponderance of the evidence that the class-size exceeds 100 members.  Finally, the parties have stipulated that minimal diversity is present. Plaintiff is a New Jersey citizen, while XPO is a Delaware corporation with its principal place of business in Georgia.  All told, the requirements of CAFA are satisfied, and this Court has jurisdiction over this matter.

### B.  Exceptions to Jurisdiction

Defendant having demonstrated that this Court has jurisdiction under CAFA, the Court now addresses Plaintiff's contention that two statutory exceptions to jurisdiction are met.  For the reasons that follow, the Court finds each of these proposed exceptions to be non-applicable, notwithstanding the fact that this case indeed has certain aspects of local character.

### 1.  The "Local Controversy" Exception

Plaintiff urges the Court to remand this matter pursuant to CAFA's "local controversy" exception as laid out in 28 U.S.C. 1332(d)(4)(A).  That provision provides that a district court must decline jurisdiction

> (A)(i) over a class action in which—
>
> > (I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;
> >
> > (II) at least 1 defendant is a defendant—
> >
> > > (aa) from whom significant relief is sought by members of the plaintiff class;
> > >
> > > (bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and

(cc) who is a citizen of the State in which the action was originally filed; and

(III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and

(ii) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons[.]

[28 U.S.C.A. § 1332(d)(4)(A)].

Pursuant to § 1332(d)(4)(A)(ii), a party who seeks to invoke this provision must demonstrate that "no other class action asserting the same or similar allegations against any of the defendants had been filed in the preceding three years." Vodenichar v. Halcon Energy Properties, 733 F.3d 497, 506-07 (3d Cir. 2013).

Here, that particular requirement prevents the exception from applying. In Ardon et al. v. 3PD, Inc., et al., No. 5:13-cv-1758-DTB (C.D. Cal.), Defendant XPO (under its prior corporate name, 3PD) is defending against a putative class action in which the plaintiffs seek overtime wages due to being mislabeled independent contractors rather than employees. That action was filed less than three years ago. Plaintiff's sole attempt to distinguish the Ardon action asserts that the claims arise under different authorities:

> The Ardon plaintiffs seek relief under the Federal Labor Standards Act and numerous California laws, while the Plaintiff and Class Members in the instant case seek relief solely under New Jersey Law. That alone shows how the two cases are 'factually and analytically different' for purposes of the local controversy exception – the proof necessary for the Ardon plaintiffs to prevail will differ from the proof needed for Plaintiff and the Class Members to prevail in the instant case.

> [Docket Entry 19, Pages 11-12].

14

Yet the inquiry as to whether another case undermines the application of the local controversy exception must be made "without regard to . . . [whether the] claims . . . involve the same causes of action or legal theories." Vodenichar, supra, 733 F.3d at 509 (emphasis added). It therefore is not significant that the Ardon plaintiffs cite to California law while Plaintiff here cites to New Jersey's. The cases assert the same basic claim to overtime wages, and both implicate the same thorny issue of whether one is an employee or an independent contractor. On that subject, both New Jersey and California law appear to weigh who exercised control over the employment, which suggests that the Ardon case and this action will likely turn on similar factual proofs. In sum, the Court is satisfied that the California Ardon action overlaps with this case enough to undermine the application of the local controversy exception.

### 2. Permissive Remand

Plaintiff additionally urges this Court to exercise its discretion to remand the case pursuant to 28 U.S.C. § 1332(d)(3). Under that provision, a "district court may, in the interests of justice and looking at the totality of the circumstances, decline to exercise jurisdiction . . . over a class action in which greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate and the primary defendants are citizens of the State in which the action was originally filed based on consideration of" various enumerated factors. See 28 U.S.C. § 1332 (d)(3).

Pursuant to the statute's plain language, discretionary remand is only allowable in class actions in which over one-third, but less than two-thirds, of the purported class members are citizens of the State where the action was filed. Here, Plaintiff affirms that approximately 90% of the putative class members are New Jersey residents. Because that percentage exceeds two-thirds, the subsection cannot apply. See Vodenichar v. Halcon Energy Properties, No. 13-cv-

0360 (AJS), 2013 WL 1386954, at *3 (W.D. Pa. Apr. 4, 2013) ("[B]ecause greater than two-thirds of the putative class members are citizens of the Commonwealth of Pennsylvania, the exception set forth in 28 U.S.C. § 1332(d)(3) will not apply."), aff'd on other grounds, 733 F.3d 497 (3d Cir. 2013); Adams v. Macon Cnty. Greyhound Park, 829 F. Supp. 2d 1127, 1140 (M.D. Ala. 2011) ("The statute contains no qualifiers—no 'if,' 'or' or 'unless'—to [its] size restriction . . . . Because the number of Plaintiffs who are citizens of Alabama exceeds two-thirds, the court has no authority to decline to exercise jurisdiction under § 1332(d)(3)."). The Court notes that at least one court appears to have treated § 1332(d)(3)'s numerical limitations simply as a requirement that at least one-third of the class members be residents of the "home" state. See Preston v. Tenet Healthsystem Mem'l Med. Ctr., 485 F.3d 804, 812-14, 817-18, 822-24 (5th Cir. 2007) (assessing whether litigant demonstrated that "at least one-third of the putative class members were citizens of Louisiana at the time that the suit was filed" but not assessing whether that number exceeded two-thirds). The Third Circuit has not addressed that approach. In any event, this subsection does not apply for an additional reason.

Section 1332 (d)(3) also requires that "the primary defendants [be] citizens of the State" where the action was filed. Interpreting identical language in Section 1332 (d)(4)'s mandatory remand provision, the Third Circuit has held that "the primary defendants" language refers to all of the primary defendants. Vodenichar v. Halcon Energy Properties, 733 F.3d 497, 506 (3d Cir. 2013) ("[B]y using the word 'the' before the words 'primary defendants' rather than the word 'a,' the statute requires remand under the home state exception only if all primary defendants are citizens of [the state where the action was filed.]"). Applying that logic, courts have reached the same conclusion with respect to Section 1332(d)(3). See, e.g., Copper Sands Homeowners Ass'n v. Copper Sands Realty, No. 2:10-cv-00510 (GMN), 2011 WL 941079, at *6 (D. Nev. Mar. 16,

2011) ("[T]he court cannot remand this case pursuant to 1332(d)(3) because not all of the primary defendants are citizens of the state in which the action was originally filed."); Meiman v. Kenton Cnty., No. 10-cv-156 (DLB), 2011 WL 350465, at *9 (E.D. Ky. Feb. 2, 2011 ("Because at least one primary defendant . . . is not a citizen of Kentucky, the state in which this action was originally filed, neither exception divests this Court of jurisdiction."); Irish v. BNSF Ry. Co., No. 08-cv-469 (SLC), 2009 WL 276519, at *16 (W.D. Wis. Feb. 4, 2009) ("[T]he use of the phrase 'the primary defendants' requires that all of the primary defendant be citizens of the state in which the action was originally filed. The railroad is a primary defendant . . . and it is not a citizen of Wisconsin. Therefore, the court cannot consider whether the interests of justice counsel in favor of remand to state court.").

Here, Plaintiff's Complaint defines its putative class as those individuals who were based out of Defendant XPO's facility in Elizabeth, New Jersey, and Plaintiff seeks to hold XPO directly liable.  XPO is not a citizen of New Jersey, and that forecloses the application of the permissive exception.  Because the exception's prerequisites are unmet, remand is not permissible notwithstanding the fact that numerous circumstantial considerations set forth under 28 U.S.C. § 1332 (d)(3)(A)-(F) may weigh in favor of remand.

## III.   CONCLUSION

For the foregoing reasons, the Court is satisfied that it has jurisdiction over this case pursuant to CAFA, and that the proposed exceptions to jurisdiction do not apply.  The Court will thus deny Plaintiff's remand motion.  An appropriate order will be filed.


        s/ Stanley R. Chesler
        STANLEY R. CHESLER
        United States District Judge

Dated: July 31, 2015